# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| JOSEPH FRANCO | § | |
| | § | |
| v. | § | SA-09-CV-452-XR |
| | § | |
| R&K SPECIALIZED HOMES, INC. | § | |

### ORDER

On this day came on to be considered Defendant's motion for summary judgment (docket no. 13).

### PROCEDURAL BACKGROUND

On May 8, 2009, Plaintiff filed his lawsuit in the 73rd Judicial District Court of Bexar County, Texas. Plaintiff was formerly employed by Defendant ("R&K") as its human resources director. Plaintiff alleges that Brhe Morgan, another employee of R&K[1], filed a complaint with the Equal Employment Opportunity Commission. Plaintiff asserts that after the Defendant became aware of the EEOC charge, Defendant's owner, Alice Hernandez, directed him to change certain dates on Morgan's Family and Medical Leave Act (FMLA) records and he refused to do so. Plaintiff alleges that he was wrongfully

---

[1] R&K provides various residential services to individuals with certain disabilities. It appears, among other activities, that they operate "four ICF homes housing 24 individuals with mental retardation" and provide assistance and support to the residents in those homes. Morgan was a "house manager" at one of these homes.

discharged when he refused this directive.

Plaintiff brings suit alleging that Defendant's action violated Texas Labor Code § 21.55, 29 U.S.C. § 2615 of the FMLA, and also is actionable pursuant to *Sabine Pilot Services, Inc. v. Hauck*, 687 S.W. 2d 733 (Tex. 1985).

Defendant timely removed the case to this Court asserting federal question jurisdiction.

**FACTUAL BACKGROUND**

On or about Tuesday, March 6, 2007, Morgan visited her physician regarding problems with her right knee. Her doctor advised her that she would need surgery, and a surgery was scheduled for March 22, 2007. Her physician gave her an attending physician statement that stated, in part, that Morgan was "unable to return to work/school as of 3/22/07 thru 5/3/07."

On March 6, Morgan informed her supervisor of the scheduled surgery. Afterwards, she met with the human resources director, Plaintiff Franco, and completed a Request for Family and Medical Leave. The FMLA request form stated, in part, that "you notified us that you need this leave beginning on March 22, 2007 and that you expect leave to continue until on or about May 3, 2007." In addition, during this meeting Franco states that Morgan asked about her "personal time" and vacation. Franco alleges that he went to his computer and obtained estimates of her "personal time" and vacation and wrote those down on a blank timesheet and gave the timesheet to Morgan.[2] Franco wrote on the

---

[2] Franco alleges that he was only able to provide Morgan estimates as it was payroll's responsibility to process payroll. "I don't do time sheets, I just give it to the payroll supervisor

2

timesheet 40 hours (22 personal).

On March 7, one of Morgan's supervisors, Gilbert Gutierrez, conducted an inspection of a number of resident homes, including some managed by Morgan. Gutierrez claims that he discovered a number of infractions.[3] On Thursday, March 8, Morgan was issued a disciplinary counseling for inadequate conditions at a home that she managed.[4]

On Friday, March 9, Morgan returned to her physician complaining of pain associated with a meniscus tear. Morgan's physician gave her an attending physician's statement that stated she was "able to perform only light duty with the following restrictions: Light duty only with crutches until surgery on 3-22-07 then off work for 6 wks."

After meeting her physician during the lunch hour, Morgan met with Gutierrez. Gutierrez informed Morgan that she could not perform her duties as a house manager because of the light-duty restrictions.[5] Morgan was sent home and instructed to meet with "human resources" (Plaintiff Franco) the following Monday. Later that Friday, Gutierrez became aware that Morgan used a

---

for their processing because I don't check for accuracy. I don't check for signatures. I don't have anything to do with – ." Franco further argues that he gave Morgan a timesheet for "illustration purposes."

[3] These included urine soaked bed sheets found in a closet, medication not correctly dispensed, out-of-date medications still in the medicine closet, and lack of patient progress documentation.

[4] Morgan acknowledged the disciplinary action notice that indicated she was being given a written warning, stating that she agreed and the problems had been corrected.

[5] Gutierrez opined that a person on crutches would be unable to "deal with the physical duties presented by managing individuals with mild to severe mental retardation, autism and emotional difficulties."

company vehicle to visit her physician.[6] Gutierrez also states that "over the weekend or early Monday," he became aware that Morgan allowed a resident to "leave on an outing with medicine in a plastic bag instead of the travel medicine bottles that were labeled," and that a resident had missed a dosage and Morgan did not complete an error report.

For some unspecified reasons, Morgan was unable to meet with Franco on that Monday and a meeting was scheduled for Wednesday.

Sometime on Monday, March 12, Franco spoke with Gail Phillips, an employee who worked in the payroll department. Phillips states that Franco told her that Morgan was "going on FMLA leave due to knee surgery and that we had to pay her for personal time and vacation time that she may have." Phillips states that Franco then handed her a timesheet with the information needed to prepare the check.[7]

It appears that an hour or two after Franco and Phillips had spoken, Franco became aware that Morgan was going to be fired. On Monday, March 12, Gutierrez prepared a memorandum to Franco informing Franco that Morgan was to be discharged because Morgan had not picked up and distributed certain allowance checks to four residents. Franco stated he would prepare the necessary paperwork, which would include payment of PTO. Gutierrez

---

[6] Morgan had previously been counseled for improperly using a company vehicle.

[7] Franco denies handing Phillips a timesheet. Franco states that he found the time sheet in his in box on Monday, March 12 and that since he does not process payroll, he merely placed the timesheet in the payroll department in-box. Franco argues that the only verbal statement he made to Gail Phillips was that Morgan had a doctor's note and that she had filled out a FMLA form.

4

disagreed with the payment of PTO to Morgan and notified Hernandez. Ms. Hernandez called Franco and informed him that Morgan was being discharged for cause and that she should not be paid any PTO. Franco did not express any opposition to the decision to discharge Morgan.

On Wednesday, Morgan reported to the office and was informed that her employment was being terminated for cause (endangering the health and safety of residents, negligence in carrying out her duties, and professional misconduct).

On May 18, 2007, Morgan filed a charge of discrimination with the EEOC.[8] After the charge was received by R&K, Hernandez had Morgan's personnel documents pulled and reviewed them. At that time, Hernandez became aware that Morgan was paid for her unused PTO. Hernandez also states that she became aware that the timesheet used by payroll to pay Morgan contained Franco's handwriting and the timesheet was not signed by Morgan's supervisor. Hernandez assembled her management team together to review the situation and decide how to proceed.

On June 5, 2007, Hernandez spoke with Franco and told him "that it was clear that one of the forms was incorrect since they contained conflicting information. Specifically, the FMLA request form stated that the leave was to begin on March 22 and the timesheet … said that Ms. Morgan had been placed on leave on Friday, March 9." Hernandez further told Franco that both documents couldn't be correct … and that the documents should be corrected…."

---

[8] In that charge Morgan alleged race, sex, and national origin discrimination, stating that she had been paid less than a male co-worker, that she was denied various days off, that her FMLA benefits were denied, and that she was discharged.

Franco argues that Hernandez pointed to the FMLA leave form and told him that she wanted the date changed.

Franco refused to alter or change Morgan's personnel documents. Franco alleges that Hernandez informed the management team that he was refusing to change the date, that thereafter he was excused from the management meeting, and afterwards he was discharged for "poor judgment." His termination letter includes the following reasons for termination: negligence in carrying out job duties, failure to meet written standards of job performance, professional misconduct, and falsifying time sheets.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the summary judgment evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 443 (5th Cir. 2005) (*quoting* Fed. R. Civ. Proc. 56). The Court reviews the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party. *FDIC v. Laguarta*, 939 F.2d 1231, 1236 (5th Cir. 1991).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit credible evidence that negates the existence of some material element of the opponent's claim or defense, or (2) demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Id.* If the moving party meets its initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Warfield v. Byron*,

436 F.3d 551, 557 (5th Cir. 2006). The nonmoving party, however, cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Id.*

## Analysis

A.  *Sabine Pilot*

In Texas, the employment-at-will doctrine recognizes the right of an employer to terminate at will and without cause the employment of any individual who is employed for an indefinite term. *E. Line & Red River R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888). The single exception under Texas common law is articulated in *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).

The elements of this state law claim have been restated by the Fifth Circuit as follows: the plaintiff must prove that (1) he was required to commit an illegal act that carries criminal penalties; (2) he refused to engage in the illegality; (3) he was discharged; and (4) the sole reason for discharge was his refusal to commit the unlawful act. *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003)(*citing Sabine Pilot*, 687 S.W.2d at 735).

Defendant first argues that Plaintiff fails to establish that he was required to commit an illegal act that carries criminal penalties. Plaintiff responds that it is undisputed that Ms. Hernandez asked him to modify a FMLA form. Plaintiff further argues that 18 U.S.C. § 1519 makes it a crime (imposing imprisonment not more than 20 years) to alter any document with the intent to

7

impede, obstruct, or influence the investigation of any department or agency of the United States.

Defendant responds that Ms. Hernandez was merely trying to get the Plaintiff to correct documents that he falsely completed in the first place and she did not have any specific intent to violate 18 U.S.C. § 1519. Defendant further argues that altering the FMLA form was of no consequence because the EEOC was merely investigating a charge of sex discrimination and reverse race discrimination - not any Family and Medical Leave Act issue.

Whether or not Defendant is correct that Hernandez was merely trying to get Morgan's personnel file to accurately reflect actual events, Hernandez was instructing Plaintiff to alter a document. The EEOC likely would have requested to review Morgan's personnel file during its investigation. Even though the EEOC would not have been investigating a FMLA issue, the chronology of events and the documentation would have been of interest to the EEOC in determining whether Defendant had a legitimate, non-discriminatory reason for its actions against Morgan. Rather than maintaining the personnel file in its actual condition (and explaining any discrepancies by way of an affidavit), the altering of the document could have the effect of impeding, obstructing, or influencing the EEOC's investigation. Defendant's motion for summary judgment on this issue is DENIED.

Alternatively, Defendant argues that Plaintiff has failed to establish that the sole reason for his discharge was his refusal to commit the unlawful act. Defendant argues that Plaintiff was "partial" or "friendly" to Morgan, Plaintiff

8

knew Morgan was going to be discharged for cause, and notwithstanding that knowledge he completed a payroll time sheet[9] for Morgan that paid Morgan for 102 hours that she did not work and provided Morgan unused paid time off (PTO) that she was ineligible to receive.

Even if the Court assumed arguendo that Ms. Hernandez did ask Plaintiff to alter Morgan's FMLA form in violation of 18 U.S.C. § 1519, Plaintiff has not demonstrated that his refusal to alter the document was the sole reason for his discharge. Hernandez states that she discharged Plaintiff because she told Franco not to give Morgan any "PTO" and that she believed that Franco submitted a timesheet that aided Morgan in obtaining PTO pay. Defendant's motion for summary judgment on this issue is GRANTED. Plaintiff provides no competent summary judgment evidence to contest that these reasons played some role in the decision to discharge him.

B.   Texas Labor Code § 21.55

Pursuant to Tex. Labor Code § 21.55, an employer commits an unlawful employment practice if the employer "retaliates or discriminates against a person who, under this chapter:

(1) opposes a discriminatory practice;

(2) makes or files a charge;

(3) files a complaint; or

---

[9] Defendant also seems to imply that if Plaintiff did not know of the decision to discharge Morgan prior to his conversation with Phillips, he became aware of the decision to discharge Morgan for cause within an hour or two and did nothing to correct any incorrect impression that the payroll department may have been acting under.

9

(4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing."

Defendant asserts that, as a matter of law, Plaintiff did not engage in any protected activity as described in (1) through (4) above. Plaintiff argues that he opposed a discriminatory practice. It appears that Plaintiff also argues that he was participating in the EEOC investigation in his role as the company's human resources director.

With regard to Plaintiff's first argument that he engaged in protected "opposition" of a discriminatory practice, section 21.55 proscribes retaliation for having opposed conduct made unlawful by the Texas Commission on Human Rights Act. Plaintiff presents no evidence that he opposed any gender discrimination or reverse racial discrimination.

With regard to whether Plaintiff engaged in protected activity by assisting or participating "in any manner" in the EEOC investigation, this issue is less than clear. Most cases raised under this theory address instances where other employees assist an employee who has been discriminated against in filing an EEOC charge.[10] Some courts, however, have held that Title VII "protects persons who have responsibility for ensuring an employer's compliance with Title VII requirements against retaliation by the employer for their participation in co–workers' Title VII proceedings." *Id*. This Court further notes that the

---

[10] *See* 149 A.L.R. Fed. 431, Who has "Participated" in Investigation, Proceeding, or Hearing and is Thereby Protected from Retaliation under § 704(a) of Title VII of Civil Rights Act of 1964 (42 U.S.C.A. § 2000e-3(a)).

10

statutory language protects an employee who "*in any manner*" testifies, assists, or participates in any EEOC investigation. Providing no redress under Title VII to human resource personnel who may be asked to modify a charging party's personnel documents could seriously undermine an EEOC investigation.[11] This Court finds that Franco "participated" in the EEOC investigation as that phrase is construed under the Texas Commission on Human Rights Act. Defendant's motion for summary judgment on this issue is DENIED.

In the alternative, Defendant argues that Plaintiff has not brought forth any competent summary judgment evidence that the reason given for Plaintiff's termination was pretextual.

The elements of a prima facie retaliation claim are that: (1) the plaintiff engaged in an activity protected by the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). Plaintiff has established a prima facie case of retaliation. As stated above, he was engaged in a protected activity (he "participated" in the EEOC investigation), he was discharged, and he was discharged within minutes of refusing to modify or alter Morgan's personnel records.[12]

---

[11] The Defendant strenuously argues that the FMLA form was irrelevant to the EEOC's investigation. Again, the fact that the EEOC was investigating Morgan's sex and race discrimination claims does not make the FMLA form irrelevant. Indeed, R&K's position statement to the EEOC in response to the charge referenced Morgan's FMLA request.

[12] A "causal link" for a prima facie showing is established if evidence shows that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001). "Close timing between an employee's protected activity and an adverse action against [her] may provide the

11

Once a plaintiff presents a prima facie case of retaliation, the burden shifts to the defendant to articulate "a legitimate, nondiscriminatory reason for the adverse employment action." *Little v. Tex. Dep't of Crim. Justice*, 177 S.W.3d 624, 631 (Tex. App.-Houston [1st Dist.] 2005, no pet.). The burden is that of production only, not persuasion. *Little*, 177 S.W.3d at 631.

If the defendant proffers a non-discriminatory rationale for the adverse employment decision, the burden returns to the plaintiff to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation]." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Under the Texas statute, a plaintiff is not required to show the adverse employment action would not have occurred "but for" her age or sex; the statute requires only that she "show that discrimination was a motivating factor in an adverse employment decision." *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 482 (Tex. 2001).[13]

Defendant argues that it is undisputed that Franco placed Morgan's interests ahead of the Company and falsified a timesheet in violation of Company policy. However, Plaintiff does dispute Defendant's version of events. Plaintiff argues that he only prepared an illustration timesheet for Morgan, that later the timesheet was placed in his in-box, and that he merely placed the

---

'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

[13] *See also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005).

12

timesheet in the payroll department in-box. Although Phillips' affidavit supports the Company's interpretation of what transpired, Plaintiff denies that he ever made any verbal statements to Phillips other than to say that Morgan had completed a FMLA form. Further, Plaintiff testified that after he refused to alter Morgan's FMLA form, Hernandez informed the senior management members of his refusal. Accordingly, a material fact issue exists as to whether Plaintiff's discharge was a motivating factor in the decision to terminate him.

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 150. Defendant's motion for summary judgment on this issue is DENIED.

C. 29 U.S.C. § 2615

Pursuant to 29 U.S.C. § 2615(a)(2), it is unlawful for any employer to discharge any individual for opposing any practice made unlawful by subchapter I. As stated above, however, Plaintiff never expressed any opposition to Morgan's discharge or the denial of her FMLA leave. Accordingly, Plaintiff has not established that he "opposed" any practice made unlawful.

Pursuant to section 2615(b)(2), it is unlawful for an employer to discharge any individual because such an individual has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right

13

provided under the subchapter.

Unlike the "participation" language under the Texas Commission on Human Rights Act and Title VII, the FMLA language differs in very important respects. The TCHRA protects employees who participate *"in any manner"* in an investigation. More importantly, section 2615(b)(2) makes it unlawful for an employer to discharge any individual because such an individual has given, or is about to give, any information in connection with any inquiry or proceeding relating to the FMLA. The Department of Labor is given investigative and enforcement oversight of the FMLA. *See* 29 U.S.C. §§ 2616, 2617.

Prior to his discharge Plaintiff did not give any information to the DOL about Morgan. Indeed it appears that Morgan never filed any pre-litigation complaint with the DOL. Morgan filed a petition in Bexar County Court at Law number 5 on July 18, 2008 (well after Franco's June 2007 discharge) alleging a FMLA violation. Accordingly, Plaintiff fails to establish that he gave or was about to give any information in connection with an inquiry or proceeding relating to Morgan's FMLA request.

Defendant's motion for summary judgment on this issue is GRANTED.

## CONCLUSION

Defendant's motion for summary judgment (docket no. 13) is GRANTED in part and DENIED in part.

Plaintiff's *Sabine Pilot* cause of action is dismissed. Plaintiff's 29 U.S.C. § 2615 claim is dismissed.

Defendant's motion for summary judgment regarding Plaintiff's Texas Labor Code § 21.55 retaliation claim is denied and this claim survives.

It is so ORDERED.

SIGNED this 10th day of May, 2010.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE